Mississippi State Highway Commission *v.* Cockrell, et al.

In Banc. Mar. 28, 1949.

(39 So. (2d) 494)

**J. M. Kuykendall, Jr.,** Assistant Attorney General, for appellant.

**Stennis & Brown,** for appellees.

**Smith, J.**

The appellants instituted proceedings in an Eminent Domain Court in Noxubee County seeking to condemn approximately an acre of land belonging to appellees, so as to obtain therefrom a certain type of road materials called "topping." This term, according to testimony in the record before us is "applied to selected material with a sand clay or a gravel or a clay gravel from which we produce material to construct bases and sub-bases for highways." In addition, it was sought to condemn a strip of 1.88 acres from the topping pit to a county road, for purposes of a way to the material.

Chapter 322, Laws 1948, substantially a reenactment of the earlier Stansel Act, in addition to authority to condemn lands for rights of way, also confers on the Highway Commission, in Section 8, the right "to condemn or acquire by gift or purchase lands containing road building materials and to develop and operated pits, mines, or other properties for the purpose of obtaining road material."

Appellees, as defendants in the Eminent Domain Court, applied to the Circuit Judge for a temporary writ of prohibition against the condemnation sought by the Highway Commission on the ground that no necessity existed for taking their lands, because other more convenient

locations of topping soil were available for the particular highway project involved. A temporary writ was issued, and the Highway Commission appeared and contested it, as well as the permanent writ also sought. In its answer, the appellants here, defendants in the court below, alleged that: "it is denied that no necessity exists for taking by said Highway Commission of the land of petitioners as petitioned for in the Eminent Domain proceedings; and defendant further answers that the question of necessity for the taking as alleged in the petition herein is not proper grounds for the issuance of the writ prayed for."

In support of its legal proposition, appellant cites many cases from this and other courts to the effect that "necessity" in such matters is a legislative and not a judicial question. For instance, the Supreme Court of the United States has said: "It is well settled that while the question whether the purpose of a taking is a public one is judicial (citing cases), the necessity and the proper extent of a taking is a legislative question (citing cases). The Legislature may refer such issues, if controverted, to the court for decision . . . ". Sears v. City of Akron, 246 U. S. 242, 38 S. Ct. 245, 248, 62 L. Ed. 688. In the opinion, it was held that where no statute provided for a court review of the question, equity could issue an injunction until the issue of necessity could be settled. And, "The general rule is that the necessity or expediency of appropriating particular property for public use is not a matter of judicial cognizance, but one for the determination of the legislative branch of the government, and this must obviously be so where the state takes for its own purposes. The state possesses the power as a sovereign, and as a sovereign exerts it. How can its citizens call on the courts to review the grounds on which the statute has acted in the absence of legislation permitting that to be done?" Adirondack R. Company v. People of State of New York, 176 U. S. 335, 20 S. Ct. 460, 465, 44 L. Ed. 492.

Texts from treatises on the law are cited to the effect
that "necessity" is a legislative question, not to be re-
viewed by the courts except for fraud or bad faith. Ap.
pellant also cites the Mississippi case of Ham et al v.
Board of Levee Commissioners for Yazoo-Mississippi
Delta, 83 Miss. 534, 35 So. 943, dealing with Chapter 168,
Laws 1884. The case was decided at our October term
1903. We are further referred to Vinegar Bend Lumber
Company et al. v. Oak Grove and G. R. Company, 1907,
89 Miss. 84, 43 So. 292. In the Ham case, supra, we said
that "It is for the courts to determine that the proposed
taking is for a public use ,but, this being so decided, it is
for the commissioners to decide upon the *necessity* of
such taking." [83 Miss. 534, 35 So. 947.] (Emphasis
supplied.) The Vinegar Bend case held that the chap-
ter on eminent domain never intended to create a tribunal
of full jurisdiction to try any and all issues that might
be raised on the subject of the right to condemn, and that
its sole function is to fix the compensation for the taking;
and since the power to determine whether the taking was
for a *public use* was not granted the court of eminent do-
main, it could not be raised in the appellate tribunal, that
is, the circuit court. We also decided that "Neither the
Constitution nor the laws of the state provide any par-
ticular tribunal in which this question shall be deter-
mined, nor is it a matter of any particular concern in
what court the question shall be settled, provided it be
determined in that forum which is capable of deciding
it." [89 Miss. 84, 43 So. 297.] Those things being true,
it was said that the remedy must be by injunction in the
chancery court, enjoining the entry upon, or appropri-
ation of, the land, because the use for which it was sought
to be taken did not constitute a *public use.*

In the Code of 1930, there first emerged in our statutes
Section 1510, now Section 2782, Code 1942. Due to the
importance of the question involved, and in aid of clear
understanding of it, we quote the statute in full, as
follows:

"The legal remedy by way of prohibition is made applicable for the purposes of testing the questions (1) whether the applicant seeking to exercise the right of eminent domain is, in character, such a corporation, association, district or other legal entity as is entitled to the right, and/or (2) whether there is a public necessity for the taking of the particular property or a part thereof which it is proposed to condemn. All the provisions in the chapter on Quo Warranto, so far as may be, shall apply to the procedure under this section; and the petition for the writ may be filed by any defendant in the condemnation proceedings, and the hearing shall be in vacation when the public interest is such as to require an expeditious trial. Upon the filing of a petition under this section the circuit judge shall issue a temporary order staying the hearing in the court of eminent domain until the cause can be tried under this section by the circuit judge, and if on the hearing last aforesaid the petition be sustained a permanent writ of prohibition shall issue. An appeal may be taken to the Supreme Court as in other cases, but if the judgment of the circuit judge be to deny the petition, the appeal aforesaid shall not operate as a supersedeas, and the court of eminent domain may neverthe less proceed."

It will be seen that the Legislature added to the right of an injunction, as to which a bond was required, the right of a writ of prohibition, wherein no bond is required. Obviously, it was sought to provide a statutory remedy by prohibition, in view of observation of various courts that there were no statutes granting jurisdiction to any special court to try the precise issue of the necessity for the taking. It is to be recalled here that the Supreme Court of the United States in the Adirondack R. Company case, asked this rhetorical question: "How can its citizens call on the courts to review the grounds on which the state has acted in te absence of legislation permitting that to be done?" This provision of the statute has never been construed by us, so far as

we can find, and no such case has been cited in the briefs. The opening sentence of the statute begins: "The legal remedy by way of prohibition is made applicable for the purposes of testing [two] questions." One of them is "whether there is a *public necessity* for the taking of the particular property or a part thereof which it is proposed to condemn." (Italics supplied.)

We are, therefore, of the opinion that appellees had the right to petition the circuit court for a writ of prohibition, and that court had the power properly to dispose of the question.

██ However, over the protests of the appellant, State Highway Commission, the circuit judge granted a jury trial, which we think was error. Appellees seek to support this action by the trial judge on the theory that Section 2782 provides that "All the provisions in the chapter on Quo Warranto, *so far as may be*, shall apply to the procedure under this section . . . ". (Italics supplied.) It is pointed out that Section 1141, Code 1942, does provide for a jury in Quo Warranto cases, and appellees, therefore, argue that they were entitled to a jury trial in the case at bar. The answer to this contention is that Section 2782 does not mandatorily require the slavish following of the statutes on procedure in Quo Warranto litigation, but directs that it shall be done only "so far as may be". The Legislature in its wisdom knew that some phases of that prescribed procedure could not be of practical or reasonable use in the trial of the writ of prohibition in such cases as the one at bar. It is not to be considered that the lawmakers would delegate to inexpert juries the right of review of the decision of the Highway Commission, as to necessity for condemnnation involving many technical and scientific phases. The disastrous catastrophe this would entail can be visualized in the paralysis that thereby could be inflicted upon the operations of the Commission. The statute went as far as reasonably possible where it provided for the determination of this question by the circuit judge.

That the statute (Section 2782, supra) does so provide for determination by the circuit judge is patently manifest from its language, as follows: "Upon the filing of a petition under this section the circuit judge shall issue a temporary order staying the hearing in the court of eminent domain until the cause can be tried under this section by *the circuit judge, and if on the hearing last aforesaid the petition be sustained* a permanent writ of prohibition shall issue." (Italics supplied.) The case of Isom v. Mississippi Central Railroad Co., 36 Miss. 300, is not in point here.

On a new trial of this case, the ciruit judge should admit, and consider only competent testimony relevant to the sole issue of "whether there is a public necessity for the taking of the particular property or a part thereof whch it is proposed to condemn." ▆▆ Evidence concerning the health of the owners of the property, damage to farming operations, and impairment of the use thereof, or possible availability of other topping material, should not be introduced, and thus will be avoided cluttering and involving the record with improper matter, not pertinent to the issue before the circuit judge.

In view of what we have said, ante, the action of the trial judge in granting a jury trial, on motion of appellees, over the protest of appellants, requires a reversal of the circuit court judgment, and remand for a new trial, in harmony with this opinion.

Reversed and remanded.