ERWIN *v.* MISS. STATE HIGHWAY COMMISSION.

Apr. 14, 1952.

No. 38398 (58 So. (2d) 52)

Geo. M. Ethridge, Jr., and Lyle V. Corey, for appellant.

Dunn & Singley, and Matthew Harper, Jr., Assistant Attorney General, for appellee.

**Ethridge, J.**

The principal question involved on this appeal is whether the chancery court has jurisdiction to test the issue of public necessity by enjoining the State Highway Commission from prosecuting an eminent domain suit in the county court, in the absence of exceptional circumstances characterized by fraud or abuse of discretion.

On April 28, 1951, appellant, J. C. Erwin, filed a bill of complaint in the Chancery Court of Lauderdale County against the Mississippi State Highway Commission, ap-

pellee. This original bill, and the amended and supplemental bill, involved about three acres of lands lying at the intersection of U. S. Highway 45 and the new route of U. S. Highway 80 on the south side of the City of Meridian. For convenience and clarity, this land is designated in the briefs and in this opinion as consisting of five parcels, designated as Parcels, I, II, III, IV, and V.

The original bill alleged that complainant was the owner of all five parcels; that from 1948 to 1950, defendant had unlawfully taken possession of Parcels I and II and had constructed a permanent highway on them, U. S. Highway 80; that defendant had made no attempt to condemn Parcels I and II, and that the taking violated Section 17, Mississippi Constitution; that complainant recognized the ''probable need'' for the two parcels and asked the court to grant complainant ''due compensation for the property rights taken''; that defendant's trespass on Parcels I and II was a continuing one, and complainant could only obtain adequate compensation at law by a multiplicity of suits; and that, therefore, complainant had no adequate remedy at law. The original bill further charged ''that the defendant contemplates taking the remainder of complainant's property'', Parcels III, IV, and V; that ''complainant anticipates further similar action by the defendant with reference to the remainder of such property''; that there is no public necessity for the taking of any additional property; and the bill sought to enjoin the commission from trespassing upon Parcels III, IV and V or from taking any of complainant's property without due compensation first being made.

Process under the original bill was served upon the Commission on April 30. On June 11 the Commission, which had not yet filed an answer to the bill in chancery, filed a petition in the County Court of Lauderdale County seeking to condemn rights of way over Parcels I, III, and IV. The petition averred that the Commission had been unable to agree with Erwin on a price for those parcels and prayed that at a hearing a jury fix the value of Par-

cels I, III, and IV, so that petitioner could enter upon the land and appropriate it for public use. Attached to the petition was a certified copy of an order of the Commission of August 22, 1950, adjudicating that it was "necessary to take for public use" that property. Two days after the eminent domain proceeding was filed by the Commission in the county court, the Commission filed on June 13 in the present chancery court action a motion to stay the chancery proceedings until such time as the eminent domain proceedings could be determined. No action was taken on that motion.

On July 18 appellant Erwin filed in the chancery court an "amended and supplemental bill of complaint". The bill contained in part substantially the same charges as were in the original bill: That Erwin owned all of the parcels, that defendant had unlawfully taken possession of Parcels I and II, which was probably necessary, and that complainant was entitled to damages for such taking. The amended bill further charged that since the filing of the original bill the defendant had instituted in the county court an eminent domain proceeding seeking to condemn Parcels I, III, and IV; that there was "no present public necessity" for the taking of Parcels III and IV, nor of Parcel V, although it was conceded that there was necessity for Parcel I. The bill then charged: "That the defendant admittedly has no immediate use for the aforesaid Parcels 3 and 4, but is seeking condemnation thereof with the view of holding the same until some distant date in the future, then to be used, if at all, as the site of a so-called 'cloverleaf' at the junction of the aforesaid New U. S. Highway #80 and U. S. Highway #45. That the defendant has advised this complainant that the plans for the construction of such a 'cloverleaf' are contingent upon sufficient funds being accumulated for that purpose out of the 'Pay-as-you-go' highway construction program now in effect in the State of Mississippi, and that the time for constructing such a 'cloverleaf', if at all, is most indefinite. * * * That such power does

not include the power of the right to take private property in the hope of putting it to public use at some indefinite and uncertain date in the future, if ever, and thus depriving the owner of such property from the use and enjoyment thereof during a period of years when no public use is being made of such property. That the aforesaid Parcels Nos. 3 and 4, and especially Parcel No. 3, constitute a very desirable business property which, because of the location at the junction of the aforesaid highways has a great potential earning capacity. That if the defendant be permitted to take said property at this time and to hold the same in idleness over a period of several years, the loss in earnings from said property during such period could easily exceed any amount which might be considered as representing a present reasonable value for said property. That any public necessity which might exist for the building of such a 'cloverleaf' is grossly insufficient to justify the taking of such valuable property several years in advance of the construction of such 'cloverleaf', thus depriving the owner thereof of the use, earnings and enjoyment of such property during such period of time. That the defendant should be enjoined by this Court from abusing its power of condemnation in any such manner.''

The amended bill further charged that the Commission was wrongfully claiming ownership of Parcels II and V. Complainant deraigned his title thereto, and charged that defendant was claiming through tax sales to the State and the City, a patent from the State to the City, and a deed from City to appellee. Complainant, therefore, sought to enjoin defendant from proceeding with the eminent domain case pending disposition of the chancery action, on the ground that it was begun after the chancery suit, involved some of the same issues, and complainant averred that this was necessary because he had no adequate remedy at law, and in order to prevent a multiplicity of suits.

The amended bill further prayed for a preliminary in-

junction pending the hearing. The chancery court denied the preliminary injunction against the prosecution of the eminent domain proceedings, on the ground of want of jurisdiction to try the question of necessity. An interlocutory appeal was allowed to this Court by order of the chancery court dated August 1, 1951.

Subsequently, appellant Erwin obtained from a Judge of this Court, on August 24, 1951, a preliminary injunction restraining appellee, Commission, from proceeding further with the condemnation proceedings pending the determination by this Court of the interlocutory appeal to this Court from the order of the chancery court denying the requested preliminary injunction.

Appellee Commission moved here to dismiss the appeal because it was premature, being an appeal from the trial court's refusal to issue a preliminary injunction, but the motion was overruled on the ground that the appeal involved also the question of whether the chancery court had jurisdiction.

Appellant contends that the chancery court was the first court to acquire jurisdiction of the parties and the subject matter under the original bill, and that the rule should be applied that the court of concurrent jurisdiction which first takes cognizance of a controversy obtains exclusive jurisdiction; and that the chancery court, having once acquired jurisdiction of this particular controversy, should proceed to adjudicate all issues involved, whether equitable in their nature or not.

However, the original bill of complaint states no cause of action for equity jurisdiction. It sought compensation for appellee taking Parcels I and II and admitted the public use and "probable" necessity for that taking. There is not involved here repeated, individual trespasses by appellee, as appellant argues. In fact, appellant only sought "due compensation for the property rights taken". He did not ask for damages for trespasses on the land. Louisville, N. and T. R. R. Co. v. Dickson, 1885, 63 Miss. 380; Miss. Power Co. v. Ballard,

1933, 166 Miss. 631, 146 So. 874. On the contrary, the bill avers that appellee has taken Parcels I and II and has constructed a paved highway on them without compensating him. For this taking, appellant has a plain and adequate remedy at law in a suit for compensation for the taking of Parcels I and II. Moreover, even if he could seek damages alone in equity, that would still not be any basis for the requested injunction as to the remaining parcels.

The original bill further charged that "the defendant contemplates taking the remainder of complainant's property" and that "complainant anticipates further similar action by the defendant with reference to the remainder of such property." So the bill further sought to enjoin these contemplated and anticipated takings of Parcels III, IV, and V, or alternatively, to enjoin appellee from any future taking of property of appellant without due compensation first being made. But these averments do not comply with the requirement that in order to enjoin further action, the injury must be impending, threatened, substantial, and irreparable. Courts of equity do not interfere to accommodate mere apprehensions of injury. Griffith, Mississippi Chancery Practice (2d Ed. 1950), Sec. 436; 19 Am. Jur., Equity, Sec. 29; 43 C. J. S., Injunctions, Sec. 23. This well established principle has been applied in Mississippi in Edgell v. Clarke, 1899, 76 Miss. 66, 23 So. 353; Neville v. Adams County, 1920, 123 Miss. 413, 86 So. 261; Meek v. Humphreys County, 1923, 133 Miss. 386, 97 So. 674. The original bill did not charge such an impending, threatened taking of Parcels III, IV, and V, as to warrant equity jurisdiction.

Hence we do not think that the original bill of complaint stated any cause of action of equity jurisdiction, and, therefore, the original bill did not give the chancery court any jurisdiction prior in time to the filing of the eminent domain suit in the county court.

Moreover, even if the original bill had properly raised

the issue of public necessity, so as to serve as the basis of the further prayer in the amended bill to enjoin the eminent domain proceedings on the ground of want of necessity, we do not think that the chancery court had the jurisdiction to issue the requested temporary injunction restraining prosecution of the eminent domain suit. Nor did it have such jurisdiction under the amended bill alone. The chancellor was correct in denying it. This conclusion necessitates a consideration of the basis of the power of eminent domain and the constitutional, statutory, and judicial restrictions upon it. The reasons are then apparent.

Eminent domain rights are attributes of sovereignty, are inherent in all sovereignty, and therefore would exist without any constitutional recognition. Brown v. Beatty, 1857, 34 Miss. 227. Prior to the 1890 Constitution, the legislature could declare the use for which property was to be taken to be a public use and that was conclusive upon the citizen. Judge George H. Ethridge, in his "Mississippi Constitutions" 1928, page 100, says that because this power was abused, Sec. 17, Miss. Constitution of 1890, was enacted. It provides: "Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public."

The effect of Constitution Sec. 17 was to make the question of public use a judicial issue. In Vinegar Bend Lumber Co. v. Oak Grove & Georgetown R. R. Co., 1906, 89 Miss. 84, 43 So. 292, it was held that an eminent domain court can consider only the compensation which should be paid for the land, and that whether the taking is for a public purpose is under Section 17 a judicial question for the chancery court. An injunction was

allowed under those facts in Vinegar Bend Lumber Co. v. Oak Grove & G. R. Co., 1906, 89 Miss. 117, 43 So. 299. To the same effect is Alabama & V. R. R. Co. v. Jackson and E. R. R. Co., 1923, 131 Miss. 857, 95 So. 733.

The scope of the Vinegar Bend case was outlined three years later in Ham v. Board of Levee Commissioners for Yazoo-Mississippi Delta, 1909, 83 Miss. 534, 555-556, 35 So. 943, 947, in which certain land owners sought to enjoin the abandonment of certain levees, and the building of certain new levees, on the ground of want of public use and public necessity. The court found existence of a public purpose. It refused to consider the question of public necessity and said:

"The building of the new levee being within the power of the board of levee commissioners, and the taking of the private property being judicially determined to be for a public use, the courts will not place judicial restraint upon the manner in which the board, in the exercise of its discretion, uses the power providentially delegated to it by the state. It is for the courts to determine that the proposed taking is for a public use, but, this being so decided, it is for the commissioners to decide upon the necessity of such taking. In re Fowler, 53 N. Y. 60; Call v. Town of Wilkesboro, 115 N. C. 337, 20 S. E. 468; Chicago, R. I. & P. R. Co. v. Town of Lake, 71 Ill. 333; Waterworks Co. v. Burkhart, 41 Ind. 364; Smedley v. Erwin, 51 Pa. 445; Joplin Consolidated Mining Co. v. City of Joplin [124 Mo. 129], 27 S. W. 406; Barrett v. Kemp, 91 Iowa, 296, 59 N. W. 76. Courts will interfere and review the exercise of the discretion of those to whom the power of eminent domain has been delegated by the legislative enactment only in exceptional cases— as when property is appropriated for private purposes under the guise of public use, or if the condemnation is sought for private gain, or from willful or malicious purposes, or to injure or destroy the rights of other parties, or that they acted without

warrant of law and oppressively. Hurley v. Levee Com'rs, 76 Miss. 141, 23 So. 580; Mills, Eminent Domain, § 11; Douglass v. Byrnes, C. C., 59 F. 29; Lynch v. Forbes [161 Mass. 302], 37 N. E. 437, 42 Am. St. Rep. 404. Confessedly, the case at bar does not fall within the exceptions stated. The good faith of the board of levee commissioners in locating the proposed levee and taking the land of complainants is not impugned, and the courts will not attempt to dictate or control their actions on the ground alone that they may have acted hastily or unwisely.''

In City of Greenwood v. Gwin, 1929, 153 Miss. 517, 121 So. 160, 162, appellees had filed their bill in chancery court to enjoin the city, appellant, from the further prosecution of an eminent domain proceeding in which the city sought to condemn a joint right of way with appellees to construct and maintain a water works and sewage system under the streets of a certain subdivision in the city. It was held that the city could condemn less than appellees' entire right. In denying the injunction requested by appellees, the Court said ''Section 17 of the Constitution makes it a judicial question as to whether the contemplated use for which property is sought to be condemned to be a public one; but it does not authorize the court to determine the public necessity for the taking. Appellant's mayor and commissioners alone could decide that question. Their decision, unless brought about by fraud or abuse of discretion, is conclusive. Ham v. Board of Levee Commissioners, 83 Miss. 534, 35 So. 943. There is nothing in the record in this case showing or tending to show that their determination of the question of public necessity was the result of either fraud or an abuse of discretion.''

In 1930 the legislature enacted Code of 1930, Sec. 1510, which is now Code of 1942, Sec. 2782. That statute provides: ''The legal remedy by way of prohibition is made applicable for the purposes of testing the questions (1) whether the applicant seeking to exercise the right of

eminent domain is, in character, such a corporation, association, district or other legal entity as is entitled to the right, and/or (2) whether there is a public necessity for the taking of the particular property or a part thereof which it is proposed to condemn. All the provisions in the chapter on Quo Warranto, so far as may be, shall apply to the procedure under this section; and the petition for the writ may be filed by any defendant in the condemnation proceedings, and the hearing shall be in vacation when the public interest is such as to require an expeditious trial. Upon the filing of a petition under this section the circuit judge shall issue a temporary order staying the hearing in the court of eminent domain until the cause can be tried under this section by the circuit judge, and if on the hearing last aforesaid the petition be sustained a permanent writ of prohibition shall issue. An appeal may be taken to the Supreme Court as in other cases, but if the judgment of the circuit judge be to deny the petition, the appeal aforesaid shall not operate as a supersedeas, and the court of eminent domain may nevertheless proceed.''

It will be noted that Sec. 2782 is an express statutory grant of power to the circuit court to test the question of public necessity, and to enjoin an eminent domain proceeding until the circuit court decides the necessity issue on the petition for writ of prohibition. But if the prohibition is denied, the petitioner upon appeal to this court cannot obtain supersedeas, and therefore can not, pending appeal to this court, enjoin the eminent domain proceedings.

We think that Code Sec. 2782 establishes the exclusive remedy and tribunal for determining the question of public necessity, in the absence of fraud or a manifest abuse of the condemning agency's discretion, as outlined in the Ham and Gwin cases. In the absence of that statute, the necessity for a taking by the sovereign was not a judicial question. The necessity, expediency and propriety of the taking was a legislative question into

which the courts would not inquire, under the Ham and Gwin cases. 18 Am. Jur., Eminent Domain, Secs. 106, 107. Sec. 2782 made the question of necessity a judicial issue cognizable only by a petition in the circuit court for a writ of prohibition. The grant of the power under Sec. 2782 excludes the implication of an analogous power of the chancery court.

Appellant relies upon statement made in two cases in recent years indicating that the prohibition remedy under Sec. 2782 was supplemental and additional to a pre-existing remedy by injunction in chancery. Dantzler v. Mississippi State Highway Commission, 1940, 187 Miss. 721, 193 So. 4, 193 So. 624; Mississippi State Highway Commission v. Cockrell, 1949, 205 Miss. 826, 39 So. (2d) 494. However, both the Dantzler and Cockrell cases involve petitions for writs of prohibition under Sec. 2782, and any reference to whether a remedy existed by injunction was necessarily dicta. The Dantzler opinion did not consider either the Ham or Gwin cases. The Cockrell opinion referred to the Ham case but did not apply it, or have any need to apply it.

In brief, there is no way to test judicially the issue of public necessity except by a petition for a writ of prohibition under Code Sec. 2782. A possible exception to this rule is where there are exceptional circumstances characterized by fraud or abuse of discretion of the condemning agency, but we do not consider or decide that factor here because the averments of the original and amended bills do not state a cause of action under that asserted requirement and exception, which was referred to but not applied in the Ham and Gwin cases. The amended bill in its averments as to the proposed future use of the lands for a cloverleaf intersection, quoted above, do not contain any averments of fraud or abuse of discretion which would warrant injunctive relief. The Commission, in exercising its power of eminent domain, must meet not only present needs but also those which may be

reasonably anticipated in the future. 18 Am. Jur., Eminent Domain, Sec. 111.

The limited area within which the court can review an exercise of the eminent domain power, even under the statutory writ of prohibition, is illustrated in City of Natchez v. Henderson, 1949, 207 Miss. 14, 41 So. (2d) 41, 42. The City of Natchez had instituted proceedings in eminent domain against one acre of land owned by Henderson, for a proposed site for a water tower and supplementary equipment for the City. Henderson petitioned under Code Sec. 2782 for a writ of prohibition, which the circuit court granted. On appeal it was stated that the evidence showed that Henderson's land was suitable and economical and upon the highest ground available. The trial court was reversed and the writ of prohibition vacated. The Court said:

"The testimony was overwhelming that a public necessity now exists for the installation of the tower. Much of the testimony for appellee was directed to the availability of other sites.

"A decision by the City that a particular site is best adapted to its proposed public use is legislative and is not reviewable by the courts. It is not to be restricted in its choice between two or more available sites. Ham v. Levee Commissioners, 83 Miss. 534, 35 So. 943; City of Greenwood v. Gwin, 153 Miss. 517. 121 So. 160; 29 C. J. S., Eminent Domain, Secs. 90, 91; 18 Am. Jur., Eminent Domain, Sec. 108. The learned circuit judge found as a fact that a public necessity existed for an additional water tower. The issue whether the contemplated use is public is of course a judicial one. Miss. Constitution 1890, Sec. 17. His granting of the writ was grounded upon the availability of other suitable sites. As has already been stated, this is not determinative nor controlling, and therefore not a subject of judicial review. The judge was moved in some degree by a consideration for the appellee whose disappointment over the ex-

propriation of his land was repeatedly made manifest.''

██ ██ Appellant contends that the statutes conferring upon the State Highway Commission the power of eminent domain limit the appellee's power to the taking of such property as is ''needed'' or ''necessary'', and that, therefore, by the use of that word in the statute the legislature made the question of necessity a judicial one for the chancery court. Code of 1942, Sec. 8023. See also Code Secs. 8020, 8021. However, the effect of this legislation is to vest a broad discretion in appellee in selecting its routes and other details, and we do not think the reference in Sec. 8023 to the Commission condemning ''all land or other property needed'' warrants the implications that (a) the legislature therefore intended to make necessity a general judicial question for the chancery court, (b) it thereby intended to remove the effect of the earlier precedents referred to above, and (c) it intended thereby to permit the activities of the Commission to be hampered and stopped over long periods of time by chancery injunctions, in addition to the statutory writ of prohibition. A similar interpretation is referred to in 18 Am. Jur., Eminent Domain, Sec. 107, as follows: ''On the other hand, it has been held that the mere fact that the statute gives the corporation making the taking power to take land 'necessary' for its purposes does not give the court any greater power to review the question of necessity than when the grant of power is not so limited, since the grantee of the power is the primary judge of the necessity and the right of the court to review its decision in case of bad faith or abuse is the same in either case.''

To this effect is Lynch v. Forbes, 1894, 161 Mass. 302, 37 N. E. 437. See also Annotation, 42 Am. St. Rep. 406.

For these reasons we conclude that the chancery court was correct in refusing to issue the preliminary injunction restraining the Commission from proceeding with its eminent domain suit. An affirmance of that action will

not preclude appellant upon remand from proceeding to adjudicate in the chancery court his suit to remove clouds with reference to Parcels II and V and his right to compensation for the taking by appellee of Parcel II, if he establishes title to it, and any other claims of this nature which appellant might have which are not inconsistent with this opinion. The preliminary injunction of August 24, 1951, issued against appellees restraining prosecution of the eminent domain proceedings pending determination of this appeal, is hereby dissolved.

Affirmed and remanded, and preliminary injunction dissolved.

**Roberds, Alexander, Kyle** and **Holmes, JJ.,** concur.