249 Miss. 358 (1964)
162 So.2d 504
Horne, et al.
v.
PEARL RIVER VALLEY WATER SUPPLY DISTRICT
No. 42919.
Supreme Court of Mississippi.
April 6, 1964.
Lee, Moore & Countiss, Jackson, for appellants.
*362 Watkins, Pyle, Edwards & Ludlam, Robert H. Weaver, Jackson, for appellee.
PATTERSON, J.
This is an appeal by the heirs of Hazel V. Horne from an adverse judgment of the Circuit Court of Rankin County, Mississippi, wherein the court refused to issue a writ of prohibition to restrain the appellee from condemning five acres of appellants' lands for the purposes of the Pearl River Valley Water Supply District. *363 The brothers and sisters of Hazel V. Horne, each of whom had pending writs of prohibition on similar five-acre adjacent tracts, joined in this appeal by agreement of the parties. Hereinafter the Pearl River Valley Water Supply District will be referred to as the District and the appellants as owners.
The land involved on this appeal lies in Rankin County on the east side of the reservoir near the reservoir dam. It is completely surrounded by other reservoir lands. The exhibits indicate the western extremity of the nearest parcel of land is only 1220 feet from the eastern end of the dam, and the northernmost five-acre tract only 1720 feet therefrom. All of the land is within one-quarter of a mile outward of the 200 foot contour line which is authorized by the authority of Chapter 197, Laws of 1958, to be condemned if public necessity requires it for the purposes of the reservoir. Upon suits of eminent domain being filed to acquire this property, the appellants here instituted suits for writs of prohibition. These suits were heard in lengthy proceedings and resulted in an adverse judgment to the owners. Hence this appeal.
(Hn 1) The owners' first contention here is that the District must name and particularize the use or uses of the land to be condemned and that such use or uses must precede and not follow the taking. Sec. 2751, Miss. Code 1942, Anno., outlines the procedures which govern the condemnation of land within this State:
"When any person or corporation having the right so to do shall exercise the right of eminent domain, he or it shall make application therefor in writing and the owners of the property sought to be condemned, and mortgagees, trustees, or other persons having an interest therein or a lien thereon shall be made defendants thereto. It shall state with certainty the right and describe the property sought to be condemned, showing that of each defendant separately. The application shall *364 be presented to the clerk of the circuit court of the county, who shall endorse thereon his appointment of a competent justice of the peace of the county in which the property or some part thereof is situated to constitute with a jury the special court of eminent domain, and he shall fix the time and place within the county for the organization thereof."
As may be seen, the requirements set forth in such section are (1) naming the persons having interest in the land; (2) stating the legal right of the condemnor to bring the action, and (3) a legal description of the land sought. This was done in each of the cases here before us. It will be noted, however, that the resolution authorizing the condemnation of this land does not spell out in detail the precise and exact usage to which the land would be subjected. The testimony reflects that this land is located in the heart of the multi-purpose reservoir project, and that it would be used for pollution control, control of access, recreational purposes, and for recreational facilities related to water recreation. A portion of these lands adjacent to the water will be made into a bathing beach. Other portions thereof will be used to accommodate a service center, which will include service stations, stores, and similar facilities for the use of the public in the enjoyment of the reservoir. A small portion of the land will be required for the relocation of the G.M. & O. Railroad, and other portions will be needed for either a cloverleaf at the eastern end of the dam or an access road to the beach and the other facilities hereinabove mentioned.
This Court has held in Pearl River Valley Water Supply District v. Brown, 248 Miss. 4, 156 So.2d 572, in regard to the necessity of having detailed plans for each use of reservoir lands, as follows:
"The resolution is copied in another part of this opinion. It shows the uses to be made of appellees' lands but neither the resolution nor the proof showed any *365 final plans indicating specifically what use is to be made of particular parts of appellees' land. We are of the opinion that appellees' argument is not well taken. The proof showed that all of said land would be used for pollution control and control of access to the reservoir. As already stated, that alone is sufficient to meet the requirements of the law on the question of public use. In addition, all the other uses such as for parks and recreational facilities are also public uses. It is unreasonable and unnecessary to require the condemnor for such public uses to include in the resolution and show by proof final plans for every part of the land taken. Such a rigid requirement would imply that no change could ever be made in the various public uses as time and circumstances might require. It would also imply that no change in plans or use could ever be made. So long as public use is shown, detailed plans are not required."
We hold, therefore, that the contention of the appellants in this regard is not well taken.
Appellants next contend that fraud or abuse of discretion was not an issue in the proceedings for a writ of prohibition. This same question was also before this Court in District v. Brown, supra, and is decisive here.
(Hn 2) "The second question for our decision is whether there is public necessity for the taking of appellees' land.
"We have herertofore stated clearly and without equivocation that the question of public use is always a judicial question and that it is made so by Section 17 of our Constitution. Our authorities are equally clear that whether there is a public necessity for a taking is essentially a legislative question. (Hn 3) The burden of proof on this issue is on the landowner who seeks to show lack of necessity, (Hn 4) and the rule is that as to whether the taking is necessary is within the discretion of the condemnor, and the courts will interfere with the exercise *366 of such discretion only when abuse of discretion or fraud is shown. This rule was stated in the Culley case, which followed Ham v. Board of Levee Commissioners, 83 Miss. 534, 35 So. 943 (1903), and City of Greenwood v. Gwin, 153 Miss. 517, 121 So. 160 (1929). See also Erwin v. Mississippi State Highway Commission, 213 Miss. 885, 58 So.2d 52 (1952). There is no authority in this State to the contrary." See also Pearl River Valley Water Supply District v. Hazel A. Wood, No. 42,992, decided February 24, 1964, not yet reported.
(Hn 5) Appellants next contend that the cases of Culley v. Pearl River Industrial Commission, 234 Miss. 788, 108 So.2d 390, and Pearl River Valley Water Supply District v. Brown, 156 So.2d 572, are not controlling under the doctrine of stare decisis and that by following these cases this land is being taken without due process. The record reflects that each of the parties here were properly in court; they had their day therein under the statute and case laws of this State. These laws were interpreted by the trial court in accordance with the principles land down in Culley and Brown, which are recent cases pertaining to the same project and which have not been overruled. It was, therefore, proper for the trial court to consider these cases as announcing the controlling principles of law under the doctrine of stare decisis. This is in accord with the judicial principles of our State and does no harm, as we can ascertain, to the Federal or State Constitutions. We hold this point is not well taken.
The final two points urged by appellants that service centers, restaurants, service stations, stores, etc., are not public uses for which the right of eminent domain may be exercised, and that a statute or resolution that commingles private and public uses is void, is disposed of by Brown, supra, contrary to the appellants' contention here.
(Hns 6-9) The court below held, and the holding is in accord with the evidence, that these lands were necessary *367 to the reservoir and that the taking thereof was for a public use. The fact that the service center and other facilities may be later leased to private interests does not detract from their public uses if the leases have appropriate provisions to insure that the use will be public and to insure pollution and access control. It will be presumed that the public officials will take care that the provisions of the leases will include these things. Culley v. Pearl River Industrial Commission, supra. In both Culley and Brown this Court has recognized the universal principle that when land is taken for a public purpose which is primary and paramount, such taking will not be defeated by the fact that incidental thereto a private use or benefit will result which would not of itself warrant the exercise of the power.
It is the opinion of this Court that all points in issue here were decided in the cases of Culley v. Pearl River Industrial Commission, supra, and Pearl River Valley Water Supply District v. Brown, supra, wherein we held (1) the act authorizing the creation of the Water Supply District was constitutional; (2) whether there is a public necessity for a taking is essentially a legislative question; (3) the question of public use is always a judicial question; (4) that final plans indicating exactly what specific use is to be made of particular portions of land is not necessary prior to their condemnation, and (5) that the paramount and primary use of this land within the one-quarter of a mile from the outside of the 300 foot contour line is for pollution control, public access, and the development of recreational facilities, and that if incidental private use or benefit will result therefrom which would not of itself warrant the exercise of eminent domain powers, this incidental use will not defeat the paramount and primary public purpose of the condemnation. We are of the opinion that the case should be and it is affirmed.
Affirmed.
*368 Lee, C.J., and Ethridge, Gillespie and Rodgers, JJ., concur.